Anton A. Ewing (not an attorney)
3077 B Clairmont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)
Email: anton@antonewing.com



**FILED**

May 22 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ GloriaVocal        DEPUTY

# UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Anton A. Ewing,

        Plaintiff,

vs.

PREMIUM MERCHANT FUNDING
ONE, LLC,

        Defendant

Case No.: **'23CV0933 BAS WVG**

**COMPLAINT**
  **47 U.S.C. §227 (TCPA)**

     This is the fourth time that Plaintiff has had to file a TCPA lawsuit against this Defendant, in this District, to try to stop them from harassing Plaintiff with repeated telemarketing calls. This is the third time Defendant has breached their written promise, after it signed an agreement at the ENE, to never call or text Plaintiff ever again. Even before the last lawsuit was dismissed, Defendant violated the TCPA and breached the settlement agreement, by calling Plaintiff for solicitation purposes. It is truly getting absurd and ridiculous. The level of

COMPLAINT  47 U.S.C. §227 (TCPA) - 1

23cv

disrespect for the laws of this country by this defendant is mindblowing.

Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") brings this civil Complaint for money damages and injunctive relief, demanding a trial by jury, against Defendant PREMIUM MERCHANT FUNDING ONE, LLC, a New York limited liability company (doing business as PMFUS or Premium Merchant Funding)[1] to stop said defendant from violating the Telephone Consumer Protection Act and the Telemarketing Sales Rule by sending telemarketing text messages and calling with prerecorded artificial voice messages to Plaintiff's personal residential cellular phone (ending in -9640), which is registered on www.donotcall.gov (the National Do Not Call Registry) without permission and without consent of Plaintiff.   Plaintiff Ewing, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and where indicated, upon information and belief, including investigation conducted by Plaintiff[2].  Plaintiff is suing to stop Defendant's practice of sending text messages using an "automatic telephone dialing system" ("ATDS") to the cellphones of consumers in San Diego county  without their prior express consent

---

[1] Plaintiff hereby puts Abe Burger and Elie Golshan on notice that they are going to be named as defendants as soon as discovery establishes a goodfaith belief that they are vicariously liable.  Please review the Uniform Fraudulent Transfer Act.

[2] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*

COMPLAINT   47 U.S.C. §227 (TCPA) - 2

23cv

by obtaining an injunction prohibiting violation of the TCPA; (2) stop Defendant's practice of sending repeated text messages to consumers on the National Do Not Call Registry, which includes Plaintiff; (3) obtain an injunction prohibiting Defendant's continued illegal efforts to send text messages and make harassing calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Ewing who was injured by Defendant's conduct.

## PARTIES

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[3].

2. Plaintiff has sued this Defendant four times before in this Court. In the settlement agreements, Defendant promised, in front of Judge Schopler and Judge Leshner, that they would never call or text ever again.

3. In the signed settlement agreement, there was no exception to making a call to Plaintiff by this Defendant, it was an absolute bar to calling.

---

[3] For clarity, this number is not a hardwired landline.

COMPLAINT  47 U.S.C. §227 (TCPA) - 3

23cv

4. Defendant PREMIUM MERCHANT FUNDING ONE, LLC is a company that conducts business throughout this District, in San Diego, California. Defendant PREMIUM MERCHANT FUNDING ONE, LLC is a "person" as defined by as defined by 47 USC §153(39).

5. Defendant Premium Merchant Funding One is located at 55 Water Street, 50th Floor, New York, NY 10041.

6. Defendant also goes by the name Premium Funding, LLC in California.

**JURISDICTION AND VENUE**

7. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). This is not a "diversity" of citizenship case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)

8. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

9. Plaintiff is informed and believes that at all relevant times, Defendant was acting as an agent and/or employee of each of the other Defendants (to be named after discovery) and was acting within the course and scope of said

COMPLAINT   47 U.S.C. §227 (TCPA) - 4

agency and/or employment with the full knowledge and consent of each of the other Defendants.  Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants[4].

10. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts.  Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording, Civil Code §1770(a)(22)(A)- illegal prerecorded voice message to a cell phone.

11. Defendant PREMIUM MERCHANT FUNDING ONE has purposefully directed its activities into California.  Area code 619 is entirely within San Diego County.

## INTRODUCTION

12. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a

---

[4] 21-cv-01204-H-WVG, PageID.3, ECF No. 1, *Benitez vs. United Debt Settlement, LLC* (SD CA 7/1/2021)
COMPLAINT   47 U.S.C. §227 (TCPA) - 5

constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of*

*Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at \*5 (U.S. July

6, 2020).  Plaintiff is also doing his job to help stop harassing and annoying

telemarketers throughout the country by filing these lawsuits.

13. The National Do Not Call Registry allows consumers to register their

telephone numbers and thereby indicate their desire not to receive telephone

solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).  Plaintiff has

done registered his phone.

14.  A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is

removed by the database administrator." *Id.*

15. When Congress enacted the TCPA in 1991, it found that telemarketers

called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

16. By 2003, due to more powerful autodialing technology, telemarketers were

calling 104 million Americans every day. *In re Rules and Regulations*

*Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

17. The problems Congress identified when it enacted the TCPA have only

grown exponentially in recent years.

COMPLAINT   47 U.S.C. §227 (TCPA) - 6

23cv

18. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

19. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million calls per day. www.robocallindex.com.  Plaintiff still receives nearly a dozen harassing and annoying robocalls each and every day from unscrupulous businesses trying to sell auto repairs, life insurance, solar panels, credit repair, student loan assistance, and merchant cash advances to name just a few.  This must stop.

20. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.  It is unfortunate that making a complaint to the FCC actually results in nothing being done.  The FCC simply does not have the resources to go after telemarketers.

23cv

21. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[5]

22. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[6]

23. In recent years a troubling trend has surfaced in the merchant cash advance and lending industry, cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

24. This trend has resulted in consumers, including this Plaintiff, being bombarded by unsolicited solicitation calls without their (or his) consent and in violation of the TCPA, in violation of CIPA, and Civil §1770.

25. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic

---

[5] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[6] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
COMPLAINT  47 U.S.C. §227 (TCPA) - 8

23cv

dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

26. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

27. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

28. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

23cv

29. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

30. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

31. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

32. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

33. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

34. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

## COMMON ALLEGATIONS

35. Defendant PREMIUM MERCHANT FUNDING ONE is a loan broker, selling its services throughout San Diego County.

36. Defendant PREMIUM MERCHANT FUNDING ONE conducts business using the assumed name Premium Bank and Premium Funding and owns and operates the website, www.pmfus.com.

37. Defendant PREMIUM MERCHANT FUNDING ONE conducts telemarketing campaigns to sell its services to consumers throughout southern California.  As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by and/or on behalf of Defendant PREMIUM MERCHANT FUNDING ONE.

38. In placing unsolicited text messages to consumers, Defendant PREMIUM MERCHANT FUNDING ONE sends or causes to be sent, multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640).

39. In response to these text messages, Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant PREMIUM MERCHANT FUNDING ONE to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($402 filing fee plus service of process fees).

40. Plaintiff and Defendant do not have a pre-existing business relationship. Plaintiff has never been a customer or client of Defendant's business.

41. Specifically, the hardware and software used by Defendant PREMIUM MERCHANT FUNDING ONE and/or its agents has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an automated fashion without human

23cv

intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff vast experience, the clear indication that an ATDS robo-dialer was used by Defendant for the calls.

42. The text messages were sent by or on Defendant's behalf and with its knowledge and approval. Defendant PREMIUM MERCHANT FUNDING ONE knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages. The text messages were generic which indicates an ATDS was used by Defendant.

43. All of the text messages were sent via an ATDS at the direction and oversight of Defendant PREMIUM MERCHANT FUNDING ONE. Said Defendant knew about, directed, ratified, and benefitted from the solicitation text messages.

44. On information and belief and based on Plaintiff's vast knowledge and experience with these type of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for

texting at a later date.[7]  Plaintiff alleges that this is exactly what Defendant PREMIUM MERCHANT FUNDING ONE has done.

45. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.  One of Defendant's employees expressly admitted that they were using an "auto dialing computer" to make the calls and send out the text messages in order to get California residents to buy their loan programs.

46. By sending unsolicited text messages as alleged herein, Defendant PREMIUM MERCHANT FUNDING ONE has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference with the use of his phone, consumption of battery life, loss of value realized for monies he paid to his AT&T carrier for the receipt of such messages, and the diminished use, enjoyment, value, and

_____

[7] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)

utility of his telephone plan. Furthermore, Defendant PREMIUM MERCHANT FUNDING ONE sent the messages knowing they trespassed against and interfered with Plaintiff's use and enjoyment of, and the ability to access, his phone, including the related data, software, and hardware components.

47. FCC regulations promulgated under the TCPA specifically prohibit Defendant from using an artificial or prerecorded voice to call Plaintiff's Number for the purpose of advertising or telemarketing absent Plaintiff's prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[8]

## PLAINTIFF EWING'S ALLEGATIONS

48. Defendant Premium Merchant Funding One called or texted Plaintiff Ewing on the following dates:

   a. March 28, 2023 at 9:45 AM from 209-659-1846 from employee Paul LePera (plepera@pmfus.com).

   b. February 16, 2022 from 914-770-3207 at 9:49 AM

   c. February 16, 2022 from 914-770-3207 at 9:45 AM

   d. February 16, 2022 from 914-770-3207 at 9:41 AM

---

[8] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions*.

e.  February 15, 2022 from 914-770-3207 at 12:58 PM

f.  February 15, 2022 from 914-770-3207 at 11:30 AM

g.  February 15, 2022 from 914-770-3207 at 11:00 AM

h.  October 18, 2021 from 213-418-1281 at 2:24 PM

i.  October 18, 2021 from 213-418-1281 at 2:59 PM

j.  September 9, 2021 from 315-585-8109 (Julius Katz)

k.  September 9, 2021 form 310-929-5501 at 8:41 AM (Julius Katz)

l.  September 9, 2021 form 310-929-5501 at 9:16 AM (Julius Katz)

m. September 9, 2021 form 310-929-5501 at 9:18 AM (Julius Katz)

n.  September 9, 2021 form 310-929-5501 at 1:19 PM (Julius Katz)

o.  September 9, 2021 form 310-929-5501 at 1:24 AM

p.  July 8, 2021 from 213-693-1617 at 11:48 AM

q.  July 8, 2021 from 213-693-1617 at 11:53 AM

r.  July 8, 2021 from 213-693-1617 at 1:30 PM

s.  July 8, 2021 from 213-693-1617 at 2:16 PM

t.  June 15, 2021 from 213-263-7953 at 1:03 PM

u.  June 15, 2021 from 213-263-7953 at 5:09 PM

v.  June 16, 2021 from 213-263-7953 at 10:55 AM

49. Because Defendant breached the settlement agreement prior to the last

TCPA lawsuit, filed by Plaintiff against Defendant, being dismissed,

23cv

Plaintiff therefore and hereby reasserts all prior TCPA violations as part of this lawsuit.

50. Premium Merchant Funding One, LLC banks at Chase Bank with account number 021000021.

51. Replying "STOP" did not work.  Plaintiff received additional subsequent text messages from Defendant Premium Merchant Funding One. Importantly, Plaintiff became enraged and violent on each telephone call making very, very clear that the caller must never telemarket him ever again. And yet, Defendant Premium Merchant Funding One keeps calling and texting.

52. Spoofing the prefix of 719, or any other local prefix spoof, is a standard ATDS robo-dialing technique or practice that all telemarketers use to attempt to increase the likelihood that a called person will answer the call. Fortunately, since the STIR/Shaken[9] laws were made effective, this scam is now significantly attenuated.

53. Defendant Premium Merchant Funding One was calling to sell its merchant cash advance or loan services.

_____

[9] https://www.fcc.gov/call-authentication

23cv

54. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages. Plaintiff Ewing has gone even further to pay for various web pages informing the world of telemarketers to not call him or else they will be sued. Moreover, Plaintiff has expressly informed over one hundred TCPA defense attorneys, in writing, across the nation to inform their clients to not call Ewing for solicitation. At the bottom of each email Plaintiff also has the following warning which he has sent to thousands of persons:

   a. "This email does not authorize you to call me for SOLICITATION. This email is not consent to TELEMARKET my phone number. Any calls without express authorized consent shall be treated as a violation of 47 USC §227. All calls are recorded."

55. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only. Notwithstanding, mixed use phones are still fully protected.

56. The text messages that Plaintiff received are solicitations encouraging the purchase of Defendant PREMIUM MERCHANT FUNDING ONE's services.

57. The text messages were sent by or on behalf of Defendant PREMIUM MERCHANT FUNDING ONE. The text messages were sent at Defendant

PREMIUM MERCHANT FUNDING ONE direction, command and control.

58. Defendant PREMIUM MERCHANT FUNDING ONE expressly and overtly controlled the exact generic content of the text messages.

59. The text messages did not address Plaintiff by name. Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

60. Said dialing system has the capacity to store and randomly generate phone numbers and to dial those numbers without human intervention.

61. Plaintiff Ewing never provided his phone number or his consent to Defendant PREMIUM MERCHANT FUNDING ONE to receive any solicitation from them or on their behalf. Prior to receiving the text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant PREMIUM MERCHANT FUNDING ONE.

62. The unauthorized solicitation telephone text messages that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

COMPLAINT  47 U.S.C. §227 (TCPA) - 19

63. Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR. *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

64. The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A). At one or more instance during these calls, Defendant PREMIUM MERCHANT FUNDING ONE utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

65. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

66. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

67. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone number, to Defendant PREMIUM MERCHANT FUNDING ONE for any purpose whatsoever. In addition, Plaintiff told Defendant PREMIUM MERCHANT

FUNDING ONE at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant PREMIUM MERCHANT FUNDING ONE contacting him. Accordingly, Defendant PREMIUM MERCHANT FUNDING ONE never received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[10]

68. Plaintiff did not have a personal relationship with Defendant PREMIUM MERCHANT FUNDING ONE at any point in time.[11]

69. Upon information and belief, Defendant PREMIUM MERCHANT FUNDING ONE did not make the telephone solicitations in error.

70. When Plaintiff answered calls from Defendant PREMIUM MERCHANT FUNDING ONE, he heard a prerecorded message and had to wait on the line to be transferred to a live representative.

71. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See

---

[10] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[11] 21-cv-01123
COMPLAINT   47 U.S.C. §227 (TCPA) - 21

23cv

In re Rules and Regulations Implementing the Telephone Consumer

Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

72. If a call is not deemed telemarketing, a defendant must nevertheless

demonstrate that it obtained the plaintiff's prior express consent. See In the

Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act

of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for

non-telemarketing and non-advertising calls").

73. The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG*

*Homes,* in the Southern District of California, that the US Supreme Court's

ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage

of the litigation, but it is more properly applied at the Rule 56 MSJ stage.

74. The court must evaluate lack of statutory standing under the Rule 12(b)(6)

standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

However, because Plaintiff is proceeding pro se, his complaint "must be held

to less stringent standards than formal pleadings drafted by lawyers" and

must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(per curiam) (reaffirming standard for pro se complaints post-*Twombly*). The

Ninth Circuit has concluded that the court's treatment of pro se filings after

*Twombly* and *Iqbal* remain the same and *pro se* pleadings must continue to

be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010);

see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos*

*v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*,

572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and

*Iqbal*, "we remain obligated to construe a pro se complaint liberally").

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant PREMIUM MERCHANT FUNDING ONE, LLC)**

75. Plaintiff Ewing repeats and realleges paragraphs 1 through 74 of this

Complaint and incorporates them by reference.

76. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides

that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered her or her telephone

number on the national do-not-call registry of persons who do not wish to

receive telephone solicitations that is maintained by the federal

government."

77. Any "person who has received more than one telephone call within any 12-

month period by or on behalf of the same entity in violation of the

regulations prescribed under this subsection may" may bring a private action

based on a violation of said regulations, which were promulgated to protect

telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

78. Defendant PREMIUM MERCHANT FUNDING ONE, LLC violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

79. Defendant PREMIUM MERCHANT FUNDING ONE, LLC violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone text message in a 12-month period made by or on behalf of Defendant PREMIUM MERCHANT FUNDING ONE, LLC in violation of 47 C.F.R. § 64.1200, as described above.

80. Defendant PREMIUM MERCHANT FUNDING ONE, LLC failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

>   (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

81. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

82. Defendant PREMIUM MERCHANT FUNDING ONE, LLC used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

83. By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant PREMIUM MERCHANT FUNDING ONE, LLC violated 47 U.S.C. § 227(b)(1)(A)(iii).

84. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

85. Defendant PREMIUM MERCHANT FUNDING ONE, LLC violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff

is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

86. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.*'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

87. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the

COMPLAINT   47 U.S.C. §227 (TCPA) - 27

person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

88. Here, Defendant PREMIUM MERCHANT FUNDING ONE, LLC sent Plaintiff Ewing multiple unsolicited text messages after he had submitted valid "STOP" and "BYE" requests.

89. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B);

e) An injunction requiring Defendant PREMIUM MERCHANT FUNDING ONE, LLC to cease all unsolicited calling activity that violates the TSR, the FTC Act and the TCPA, and to otherwise protect the interests Plaintiff Ewing;

f) for exemplary and punitive damages against Defendant in an amount to be determined with exactness at trial herein; and

23cv

g) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ewing requests a jury trial.

Dated this 22nd day of May, 2023.

Anton A. Ewing, Plaintiff
(not a lawyer)

COMPLAINT  47 U.S.C. §227 (TCPA) - 30

23cv